IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

Brickley Enterprises, LLC,
          Plaintiff,

          vs.                                    Case No. 15-1376-JTM

Scottsdale Insurance Company,
          Defendant.

MEMORANDUM AND ORDER

      Plaintiff Brickley Enterprises, operating as JCI Rentals, seeks recovery on an insurance policy issued by defendant Scottsdale Insurance, for hail damage to JCI property. Scottsdale rejected Brickley's claim, arguing that the policy was cancelled for nonpayment of premiums after a modification to the renewed policy increased the premiums due. Brickley argues that Kansas law precludes Scottsdale from changing the policy at the time of the purported change, and has moved for summary judgment. For the reasons provided herein, the court grants Brickley's motion.

      Summary judgment is proper where the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). In considering a motion for summary judgment, the court must examine all evidence in a light most favorable to the opposing party. *McKenzie v. Mercy Hospital*, 854 F.2d 365, 367 (10th Cir. 1988). The party moving for summary judgment must demonstrate its entitlement to summary judgment beyond a reasonable doubt. *Ellis v. El Paso Natural Gas Co.*, 754 F.2d 884, 885 (10th Cir. 1985). The moving party

need not disprove plaintiff's claim; it need only establish that the factual allegations have no legal significance. *Dayton Hudson Corp. v. Macerich Real Estate Co.*, 812 F.2d 1319, 1323 (10th Cir. 1987).

In resisting a motion for summary judgment, the opposing party may not rely upon mere allegations or denials contained in its pleadings or briefs. Rather, the nonmoving party must come forward with specific facts showing the presence of a genuine issue of material fact for trial and significant probative evidence supporting the allegation. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). Once the moving party has carried its burden under Rule 56(c), the party opposing summary judgment must do more than simply show there is some metaphysical doubt as to the material facts. "In the language of the Rule, the nonmoving party must come forward with 'specific facts showing that there is a **genuine issue for trial**.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed.R.Civ.P. 56(e)) (emphasis in *Matsushita*). One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and the rule should be interpreted in a way that allows it to accomplish this purpose. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

*Findings of Fact*

The facts establish that through its agent Chris-Leef General Agency of Shawnee Mission, Kansas, Scottsdale issued a commercial property insurance policy to JCI, covering real property in El Dorado, Kansas. Chris-Leef offered the policy on June 13, 2014, as a renewal to a prior policy, with a request for "binding instructions" to the Tony Cope Agency representing JCI.

On July 1, 2014, Cope responded "to bind this renewal effective today" so there would be no lapse in coverage. The binder limited coverage to the building to $675,000, and provided for an annual premium of $6,977.98, including policy fee and Kansas tax. The

policy provided coverage for damage and loss to the real property, and specifically insured against risks of direct physical loss to the property, including hail and wind damage.

JCI financed the cost of the policy through IPFS Corporation (Premium Financing Specialists), which paid the full policy premium to Scottsdale through Chris-Leaf Agency and set up financing arrangements with JCI. Such premium paid was a commitment for the entire policy period as set forth above. JCI Rentals timely paid the required down payment and all nine subsequent installment payments, the last being on April 9, 2015.

On October 17, 2014, Scottsdale notified Chris-Leef that it believed the building value was low, and told the agent to give JCI the option of increasing the value of the building or cancelling the policy.

Ten days later, Chris-Leef gave Cope a copy of the building valuation, and indicated that Scottsdale had stated "that in order to keep coverage on this account, the building coverage must be increased to $957,213" and that "if the building limit is not increased to the amount that should be insured, we must send cancellation." Scottsdale stresses that Cope did not respond to Chris-Leef with any indication that JCI wished to cancel the policy.

On February 4, 2015, Scottsdale issued an amended Commercial Property Coverage Part Supplemental Declarations. The Limit of Insurance valued the building at $957,213.00, with an increase to the premium of $2,201.00. The effective date of the policy change was shown as October 27, 2014, and the premium amount was shown as prorated to $1,490.00. The policy change endorsement represented that the change was "understood and agreed." The endorsement further stated that the additional premium was due March 15, 2015.

JCI stresses that it had not actually agreed to any change in evaluation of property or increased premium, and had not requested additional insurance. Endorsement instructions were sent on the same day, with no indication as to whether the changes needed "to be signed." JCI did not separately agree to the supplemental declarations.

According to Brickley, Scottsdale did not directly communicate with JCI.

The following day, Chris-Leef emailed an invoice to Cope Insurance for the additional premium of $1,430.40. Chris-Leef wrote seeking "to expedite a timely receipt of this to our agents." Within a few minutes, Cope responded by email, noting his review of the file and asking if JCI had directly requested the increase.

On February 6, Chris-Leef responded that "it looks like if we did not increase those values that the carrier would have sent cancellation." At Cope's request, Chris-Leef sent another copy of the building valuation report on March 4, 2015.

On April 16, 2015, Chris-Leef prepared a Notice of Cancellation for JCI Rentals, stating that the specific reason for cancellation was "DUE TO NONPAYMENT OF ENDORSEMENT PREMIUM" with effective date of April 29, 2015.

Scottsdale gave no notice to IPFS, the premium financing company, of the change in premium.

Chris-Leef sent the first premium late notice to Cope on March 24, 2015. Two days later, Cope emailed stating that "I have dispatched payment via Bank of America. It shows that it will be delivered on/before 3/31."

Chris-Leef sent a second premium late notice on April 3, 2015. Cope responded by email the same day stating that the payment was mailed, asking Chris-Leef to check the mail and offering to have the payment tracked.

Chris-Leef sent a third late notice to Cope on April 10, 2015. According to Scottsdale, these notices were sent out later than usual because of Cope's statements that they money was on the way. Cope did not indicate that the change in the policy was not acceptable.

The Direct Notice of Cancellation was sent to JPI and emailed to Cope on April 16, 2015, stating that the policy was cancelled effective April 29, 2015. Cope admits that he received a copy of the Notice on April 16, and immediately emailed it to JCI.

The owner of JCI, Jonathan Brickley, admitted receiving the Notice, but "didn't

really look at it since I thought it was probably renewal paperwork, and we were not going to renew it."

On May 11, Chris-Leef notified Cope that a premium refund was applied to the amount owed, leaving a balance owed on the policy. Cope paid the balance owed on May 26, 2015.

On May 26, 2015, a hail storm caused up to $76,698 in damage to the El Dorado property. The actual amount of the storm damage is disputed.

JCI gave notice of a claim, which Scottsdale acknowledged on June 8, 2015. An independent adjuster was hired and the property was inspected on June 22, 2015. On July 7, 2015, JCI was informed that the policy was not in force.

Pursuant to the terms of the policy, Scottsdale has the right to cancel the policy for "nonpayment of premium" with ten days notice.

At the time of the purported cancellation for non-payment, Scottsdale had been paid the entirety of the original annual premium.

In late June or early July, 2015 Brickley presented a complaint to the Kansas Insurance Department. In the complaint, Brickley stated that he had not received a bill for the new premium, and had received notice of cancellation, which was sent to the wrong address. He further indicated his belief that his agent was also surprised by the cancellation.

*Conclusions of Law*

The essence of the plaintiff's summary judgment argument is that it never consented to any modification to the policy. (Dkt. 20, at 8). It argues that Scottsdale cannot change the terms of the policy unilaterally, and could not cancel the policy under K.S.A. 40-2,120, because none of the factors permitting such relief are present here.

In response, Scottsdale cites policy language permitting cancellation for non-

payment of premiums. It stresses that its offer to amend the policy was was never rejected by Brickley's agent. (Dkt. 23, at 16). Rather, the agent promptly responded to receipt of the endorsement and billing with a question and no objection. Scottsdale also dentifies a number of facts which it contends show that JCI (through its agent Cope) accepted the modified endorsement by failing to object to the proffered reason for the change in the policy, and instead simply asking for another copy of the building valuation report. In addition, Cope responded to late notices on the additional premiums by stating that payments had been sent, and paid the premium due on May 26, 2015. (Dkt. 23, at 16).

Certainly Cope as Brickley's agent had the power to bind the plaintiff (*see Holley v. Allen Drilling Co.*, 241 Kan. 707, Syl. 5, 740 P.2d 1077 (1987), and could do so through acquiescence. *See Caterpillar Tractor Co. v. Sickler*, 149 Kan. 457, 87 P.2d 503 (1939).

However, it may be seen that most of the facts cited by Scottsdale involve a failure to object, rather than any clear manifestation of consent to the higher premiums. This might create a fact question as to whether Brickley did legally agree to the modified policy, but the court need not resolve the question, because the defendant's argument assumes the legality of the threatened cancellation.

K.S.A. 40-2,120 provides:

> No policy of property or casualty insurance, other than accident and sickness, used primarily for business or professional needs that has been in effect for 90 days or more may be canceled except for one of the following reasons:
>
> (a) Nonpayment of premium;
>
> (b) the policy was issued because of a material misrepresentation;
>
> (c) any insured violated any of the material terms and conditions of the policy;
>
> (d) unfavorable underwriting factors, specific to the insured, exist that were not present at the inception of the policy;
>
> (e) a determination by the commissioner that continuation of coverage could place the insurer in a hazardous financial condition or in violation

>    of the laws of this state; or
>
> (f) a determination by the commissioner that the insurer no longer has adequate reinsurance to meet the insurer's needs.

None of these factors is present here. Scottsdale asserts in its response that "[i]n this case, where the insured value of the property was only 56% of the value of the insured property, there was either a material misrepresentation or unfavorable underwriting factor." (Dkt. 23, at 18). But Scottsdale offers this as a conclusion only, and provides absolutely no factual support for its attempt to escape from the clear terms of the statute.

Subsection (b), providing for cancellation based on a "material misrepresentation" is taken to mean a deliberate concealment of a material fact. *See Evergreeen Recycle v. Indiana Lumbermens Mut. Ins.*, 51 Kan. App.2d 459, 474, 350 P.3d 1091 (2015) (citing statute and observing that "[i]n order to defend on a claim of material misrepresentation as provided for in the policy, Lumbermens would have to establish that Evergreen willfully concealed or misrepresented a material fact in procuring the coverage"). Here, the defendant has pointed to no facts which would support such a conclusion.

Subsection (d) indeed permits cancellation of a policy based on "unfavorable underwriting factors," but Scottsdale ignores the rest of the provision, which indicates that these must be changes which "were not present at the inception of the policy." Scottsdale has again supplied no evidence that the actual value of the building changed radically after the policy took effect. The only thing that apparently changed was Scottsdale's assessment of that valuation.

The whole point of the statute is to limit the ability of an insurer to cancel — or in this case threaten to cancel — a policy after it takes effect.

"To modify an existing agreement, either by expressed assent or by assent implied from conduct of the parties, the agreement to modify must be supported by an independent consideration." *Augusta Med. Complex v. Blue Cross of Kansas*, 227 Kan. 469, 608

P.2d 890, 894 (1980) (citing *Bloch v. Fedak*, 210 Kan. 63, 65, 499 P.2d 1052 (1972)). Here, even assuming that the agent of the insured indeed consented to the modification of the existing policy, there was no consideration for the supposed agreement. The supposed consideration, that Scottsdale would otherwise cancel the policy, was nonexistent because the threat was hollow. The insurer could not lawfully cancel the policy in light of K.S.A. 40-2,102.

IT IS ACCORDINGLY ORDERED this 3rd day of August, 2016, that the plaintiff's Motion for Summary Judgment (Dkt. 19) is hereby granted, except that the court finds that a material question of fact exists as to the amount of plaintiff's damages.

   s/ J. Thomas Marten     
J. THOMAS MARTEN, JUDGE
